UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORNELIUS HERRING and
GEOFFREY HOWARD,

       Plaintiffs,

v.                                                              Case No. 22-cv-11109
                                                                Honorable Linda V. Parker

CITY OF ECORSE, LAMAR TIDWELL,
MICHAEL MOORE and
NARDA BRUNO,

       Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On May 20, 2022, Plaintiffs filed this action against Defendants alleging

First Amendment retaliation in connection with Plaintiffs' employment as police

officers with Defendant City of Ecorse ("Ecorse").  The matter is presently before

the Court on Defendants' motion for summary judgment pursuant to Federal Rule

of Civil Procedure 56.  (ECF No. 24.)  The motion has been fully briefed.  (ECF

Nos. 25, 27.)  Finding the facts and legal issues adequately presented in the parties'

briefs, the Court is dispensing with oral argument pursuant to Eastern District of

Michigan Local Rule 7.1(f).

## I.     Standard of Review

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant meets this burden, "[t]he party opposing the motion must show that 'there is a genuine issue for trial' by pointing to evidence on which 'a reasonable jury could return a verdict' for that party."  *Smith v. City of Toledo*, 13 F.4th 508, 514 (6th Cir. 2021) (quoting *Liberty Lobby*, 477 U.S. at 248).  The non-movant's evidence generally must be accepted as true and "all justifiable inferences" must be drawn in the non-movant's favor.  *Liberty Lobby*, 477 U.S. at 255.

## II.     Factual and Procedural Background[1]

### A.     The Parties

Plaintiffs are former employees of Ecorse's Department of Safety ("police department").  Defendant Lamar Tidwell is, and was during the relevant period, Ecorse's mayor and its chief law enforcement officer.  Defendant Michael Moore was the director of the police department during the relevant period.  He was terminated from the position on October 9, 2020.  (ECF No. 24-2 at PageID. 1518 ¶ 1.)  Defendant Narda Bruno was the deputy director of the police department during the relevant period.

### B.     Plaintiffs' Reports Regarding LEIN Information & Vehicles

In July 2018, Plaintiffs learned "that police officers were using impounded vehicles for their personal [use] or other improper purpose and [were] directing tow company personnel to falsify information to insurance companies regarding the nature of the impound or property."  (ECF No. 1 at PageID. 9 ¶ 31.)  This information related to Ecorse police officer Kevin Barkman, as well as officers in

---

[1] Neither Plaintiffs nor Defendants provide a thorough background of the relevant facts in their briefs, much less citations to the record to support those facts.  The Court, therefore, is providing the factual background from its prior opinion and order on Defendants' motion to dismiss.  It will cite to the record when quoting directly from evidence and when new facts are discussed and evidentiary support is provided in the current briefing.  It is not the Court's duty search out the facts in the record.

other Metropolitan Detroit police departments.  On October 31, 2018, Plaintiffs

shared this information with the United States Federal Bureau of Investigation's

Public Corruption Task Force, as Plaintiffs believed the activity constituted

insurance fraud and theft or conversion of seized vehicles.  They spoke with FBI

Special Agent Peter Ackerly on that date.

### C.    Plaintiffs' State Court Lawsuits

In July 2018, Plaintiffs filed separate complaints in state court against

Ecorse, Tidwell, and Moore (hereafter collectively "State-Court Defendants"),

which were amended in October 2019.  (*See* ECF No. 7-4; ECF No. 7-5; ECF No.

9-3.)[2]  The attorneys representing Plaintiffs in the pending lawsuit also represented

them in the state court proceedings.  (*Id.*)  The lawsuits were consolidated.  Both

complaints claimed discrimination and retaliation in violation of Michigan law.[3]

(*Id*.)  Plaintiffs alleged that the State-Court Defendants took certain actions against

them because, among other reasons, Plaintiffs had spoken and cooperated with the

FBI.

The State-Court Defendants filed motions for summary disposition in the

state court lawsuits, which were granted.  In Howard's case, the motion was

---

[2] Howard's initial state court complaint is not part of the record.

[3] In their state court pleadings, Herring and Howard both alleged race discrimination.  Howard also alleged gender discrimination.

granted on August 18, 2020.  (ECF No. 7-7.)  Howard's motion for reconsideration

was denied on September 29, 2020.  In Herring's case, the State-Court Defendants'

motion for summary disposition was granted on March 19, 2021.

### D.    Plaintiffs' Complaint in the Present Matter

As indicated, Plaintiffs filed the instant lawsuit against Ecorse, Tidwell,

Moore, and Bruno (collectively "Defendants") on May 20, 2022.  In their

Complaint, brought pursuant to 42 U.S.C. § 1983, Plaintiffs allege that Defendants

violated their First Amendment rights to freedom of speech and association.  (*See*

*generally* ECF No. 1.)  Specifically, as to their "freedom of speech" count,

Plaintiffs allege that they suffered retaliation because of their reports of suspected

corruption related to the LEIN system and theft or conversion of seized vehicles

and because of their participation in the related FBI investigation.  (*See, e.g., id*. at

PageID. 10-14 ¶¶ 34-36.)  In their "freedom of association" count, Plaintiffs assert

that they were "punished" for associating with the individuals to whom they made

their reports.  (*See id.* at PageID. 24-25 ¶¶ 76-79.)

### E.    This Court's Prior Ruling on Res Judicata

In a decision filed on February 7, 2023, this Court held that res judicata

barred Plaintiffs' claims in the present matter to the extent based on alleged

retaliatory actions known or knowable while the state-court litigation was pending.

(ECF No. 11.)  This Court found that "almost all of the conduct" alleged by

Plaintiffs currently "occurred while the state court litigation was pending and any retaliation claim based on that conduct was ripe at that time." (*Id*. at PageID. 1378.)  However, at the time of the Court's decision, it was unclear when Plaintiffs learned of some of the adverse actions alleged in their Complaint: (a) a September 23, 2020 official email stating that Howard was physically and mentally unfit for duty and that Plaintiffs were homophobic; (b) statements to the Detroit News in October 2020 that Plaintiffs were homophobic and corrupt; and (c) assertions in a federal lawsuit filed on November 20, 2020, alleging that Plaintiffs were homophobic.[4]   (*Id*. at PageID. 1381.)  As discussed *infra*, Plaintiffs also are asserting that Defendants took an adverse action against Herring when requiring him to undergo fitness-for-duty examinations when he returned to work after being

---

[4] In their response brief, Plaintiffs maintain that they still have not been allowed the opportunity to develop the record and that Defendants' motion is, therefore, premature.  (*See* ECF No. 25 at PageID. 1923.)  While Plaintiffs did file a motion to extend the scheduling order deadlines shortly before the discovery cut off (*see* ECF No. 22), they failed to address any of the factors relevant to whether a scheduling order should be modified (*see id*.; *see also* ECF No. 28 at PageID. 2202).  Plaintiffs did not explain what additional discovery was needed and offered no explanation for why discovery could not be completed by the deadline.  Nor did Plaintiffs follow the procedures in Federal Rule of Civil Procedure 56 for when a nonmovant claims that facts are unavailable to respond to a summary judgment motion.  *See* Fed. R. Civ. P. 56(d).  In any event, as discussed *infra*, the Court finds that the adverse comments in the September 23, 2020 email, *Detroit News* articles, and federal lawsuit do not support Plaintiffs' claims either because they are comments Plaintiffs were aware of while their state lawsuits were pending or are otherwise not actionable.

terminated in 2019, which caused Herring to voluntarily retire with full benefits when he did not pass the psychological examination.  Plaintiffs further claim that Defendants took an adverse action against Howard when requiring him to undergo a fitness-for-duty examination in 2022.

### III.    Defendants' Arguments

Defendants seek summary judgment on several grounds.  First, they argue that, even if Plaintiffs spoke on a matter of public concern, their right to speak was outweighed by Defendants' countervailing interest in avoiding discord and quelling disruption within the police department.  Second, Defendants argue that Plaintiffs did not suffer any adverse actions as defined under the law.

Defendants next maintain that there is no causal connection between Plaintiffs' alleged protected conduct and the alleged adverse actions.  Defendants also assert qualified immunity and renew their res judicata argument with respect to the remaining actions on which Plaintiffs' claims are based.  Defendants argue that there is no basis on which to hold Ecorse liable for the alleged constitutional violations.  Within their brief, Defendants also maintain that actions taken by Moore while he was not an Ecorse official cannot support Plaintiffs' § 1983 claims.

The Court addresses only those arguments necessary to resolve Defendants' motion.

## IV.    Applicable Law & Analysis

To establish their First Amendment retaliation claim, Plaintiffs must demonstrate the following: (1) they "engaged in activity the First Amendment protects"; (2) they "suffered an adverse action . . . that would dissuade individuals of ordinary firmness from doing 'what they were doing'"; and (3) "a causal link connects their First Amendment activity and [Defendants'] adverse actions." *Cunningham v. Blackwell*, 41 F.4th 530, 541 (6th Cir. 2022) (internal quotation marks and citations omitted).  As Defendants assert qualified immunity, Plaintiffs also must show that Defendants violated "clearly established law."  *Id*. at 541-42.

Plaintiffs' First Amendment association claim is indistinguishable from their retaliation claim.  *See Monks v. Marlinga*, 923 F.2d 423, 425 (6th Cir. 1991). Plaintiffs allege that they suffered adverse actions because of their "association" with the FBI—that is, their report to the agency of the claimed misconduct regarding vehicle seizures and cooperation in its investigation.  Thus, the Court analyzes both claims together.  *See id*.

The Court finds it most efficient to address the adverse actions alleged by Plaintiffs one by one.

### A.    September 23, 2020 Internal Email

In their motion, Defendants argue that the September 23, 2020 internal Ecorse police department email does not constitute an adverse action against

8

Plaintiffs.  (*See* ECF No. 24 at PageID. 1494-95.)  The email, written by Moore to

Ecorse Administrator Richard J. Marsh and Narda, was in response to Howard's

complaint about an alleged altercation between himself and Barkman at a union

meeting.  (*See* ECF No. 24-2 at PageID. 1521 ¶ 11; ECF No. 25-9.)

In their response brief, Plaintiffs include the email in their list of retaliatory

actions on which their claims are based (ECF No. 25 at PageID. 1906 (citing ECF

No. 25-9).)  However, that is the only mention of the email in their brief.  (*See*

*generally id.*)  Plaintiffs fail to address Defendants' argument for why it does not

support Plaintiffs' claims.  Therefore, the Court deems the issue waived. *See Kinch*

*v. Pinnacle Foods Grp., LLC*, 758 F. App'x 473, 480 (6th Cir. 2018) (concluding

that the plaintiff "abandoned her argument by presenting a perfunctory one" when

she "mention[ed] her retaliation claim only twice in her opening brief") (citing

*United States v. Hendrickson*, 822 F.3d 812, 829 n.10 (6th Cir. 2016)).

### B.    Assertions in Federal Pleadings

Plaintiffs identify as an adverse action the "assert[ions] in federal pleadings

that Plaintiffs were homophobic, misogynistic, mentally unstable, incompetent,

and the subject of an investigation by the Michigan State Police."  (*See* ECF No.

25 at PageID. 1907; *see also* ECF No. 1 at PageID. 11 ¶ 36(f).)  Plaintiffs do not

attribute the assertions to a particular defendant; however, they are referring to a

lawsuit filed by Moore, only, against Ecorse and Richard J. Marsh Jr.  (*See id.* at

PageID. 1914.)  That lawsuit, filed on November 20, 2020, arose from Moore's termination as Ecorse's Director of Public Safety on October 9, 2020.  *See* Compl., *Moore v. City of Ecorse, et al.*, No. 20-cv-13093 (E.D. Mich. filed Nov. 20, 2020), ECF No. 1.)

Moore's pleading does not in fact include any of the assertions Plaintiffs claim are there.  In fact, Plaintiffs' names do not appear anywhere in the complaint, nor are the words "homophobic, misogynistic, mentally unstable, [or] incompetent" found.  (*See id.*)  In any event, Moore was not an Ecorse official when he filed his federal lawsuit, nor was he jointly engaged with state officials when he filed it.

To prevail on their § 1983 claims, Plaintiffs must satisfy two elements: (1) Defendants "acted under color of state law"; and (2) Defendant's action(s) "deprived [them] of rights secured under federal law."  *Chambers v. Sanders*, 63 F.4th 1092, 1096 (6th Cir. 2023) (quoting *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010)).  Generally, "[a] plaintiff may not proceed under § 1983 against a private party 'no matter how discriminatory or wrongful' the party's conduct."  *Tahfs v. Proctor*, 316 F.3d 584, 591 (6th Cir. 2003) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).  There is an exception to this general rule when the private party is "jointly engaged with state officials" in the prohibited conduct, *see id.*, but the exception is inapplicable to Moore's

10

conduct in suing his former employer.[5] (").  Thus, even if Moore made the

claimed statements about Plaintiffs in his federal court pleading, and even if those

statements constituted an adverse action, the statements do not support their § 1983

claims.

### C.    Detroit News Articles

When listing the adverse actions against them in the May 20, 2022

Complaint Plaintiffs filed in this case, they identified statements about them in an

October 1, 2020 *Detroit News* article.  (*See* ECF No. 1 at PageID. 11 ¶ 36(b), (c).)

In the brief Plaintiffs filed in response to Defendants' pending motion, they also

point to *Detroit News* articles published on May 5, 2021 and October 24, 2023.

(*See* ECF No. 25 at PageID. 1914 (citing ECF Nos. 25-11, 25-14).)  The October 1,

2020 article discussed the investigation of a "cover up" by Moore and other Ecorse

officers after the FBI raised questions about their handling of a stolen vehicle and

---

[5] The Sixth Circuit recognizes three tests for determining whether private conduct is fairly attributable to the State to conclude that a private party was acting under color of state law: "the public function test, the state compulsion test, and the nexus test."  *Nugent v. Spectrum Juvenile Justice Servs.*, 72 F.4th 135, 140 (6th Cir. 2023) (citing *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014)).  In filing his federal-court complaint against Ecorse and Marsh, Moore was not "exercise[ing] powers which are traditionally exclusively reserved to the state[,]" the state obviously did not "significantly encourage[] or somehow coerce[] [Moore]" to file the lawsuit or to make certain allegations in his pleading, and there was not a "sufficiently close relationship . . . between the state and [Moore] so that the action taken may be attributed to the state."  *Tahfs*, 316 F.3d at 591 (quoting *Wllison v. Garbarino*, 48 F.3d 193, 195 (6th Cir. 1995)).

Moore's accusation that FBI Special Agent Ackerly lied in a February 11, 2019 affidavit.  (ECF No. 25-3.)  The article quoted Moore as stating: "This is a situation where a few police officers don't like Barkman because he's openly gay[.]"  (*Id*.)

The Detroit News included the same quote in its article on May 5, 2021, which discussed the City's vote to oust Public Safety Director Joseph Thomas and replace him with Moore and Bruno.  (ECF No. 25-14.)  Thomas claimed he was fired for filing a whistleblower lawsuit concerning the handling of stolen vehicles by Moore, Barkman, and other Ecorse police officers.  The article recounted the FBI's investigation on the same subject, Plaintiffs' statements to the FBI, and Moore's claim that the accusations were due to the accusers dislike of Barkman because of his sexual orientation.

On October 24, 2023, the Detroit News published an article on Barkman's lawsuit against Ecorse, Herring, Howard, and others, in which Barkman alleged harassment based on his sexual orientation.  (ECF No. 25-11.)  The article indicates that Tidwell did not respond for comment, but that he told investigatiors who had previously investigated Barkman's complaints that "the officers 'threw everything they could' at Barkman" and that "it was a known issue that they had a problem with Barkman being gay."  (*Id*.)  The article also quotes from a memo from Moore to the former City Administrator in September 2020, in which Moore

wrote that "there is no doubt in my mind that they were harassing Barkman[.]"
(*Id*.)

None of the *Detroit News* articles were part of the court record when the
Court previously considered whether res judicata barred any of the adverse actions
alleged by Plaintiffs.  Having now reviewed the publications, it is clear that most,
if not all, of the statements attributed to Moore and Tidwell were made prior to the
date of the publications and before Plaintiffs' state-court lawsuits terminated and
were known or knowable by Plaintiffs before those latter dates.  The May 2021
article simply recounts the same statement by Moore included in the October 2020
article.  The article published on October 24, 2023 expressly states that Tidwell did
not comment for the article.  In any event, for some time—and well before
Plaintiffs' state-court lawsuits terminated—Moore and Tidwell had been raising
Plaintiffs' alleged homophobia to attack the truth of their statements to the FBI,
and they had accused Plaintiffs of harassing Barkman because of his sexual
orientation.

Thus, for the reasons discussed in the Court's decision on February 7, 2023,
it concludes that res judicata precludes Plaintiffs from basing their claims on the
statements attributable to Defendants in these *Detroit News* articles.

### D.     Herring's Fitness-for-Duty Examination

In April 2021, Defendants required Herring to undergo a fitness-for-duty

examination in order to return to work after his 2019 termination for misconduct.

Notably, while Plaintiffs remark in their response brief that Herring's termination

was "for a long enough period such that to be reinstated[] he had to requalify with

[the Michigan Commission on Law Enforcement Standards]" ("MCOLES") (*see*

ECF No. 25 at PageID. 1914), they do not identify the termination or the length of

time Herring was off work among the adverse actions supporting their current First

Amendment claims.[6]  (*See* ECF No. 24-10 at PageID. 1674 ¶ 5, PageID. 1684.)

MCOLES mandates examinations like the one Herring was required to

undergo upon his reinstatement to the police department.  (*Id.*; *see also id.* at

PageID. ECF No. 24-8 at PageID. 1667 ¶ 2.)  Herring passed his physical exam but

not the psychological portion conducted in May 2021.  (ECF No. 24-10 at PageID.

1675 ¶ 6; ECF No. 24-9 at PageID. 1669 ¶ 5.)  Herring had six months to fix any

deficiencies but instead elected to retire from the police department effective May

24, 2021.  (*Id.* at PageID. 1669 ¶ 5, PageID. 1672.)

Herring does not dispute these facts, including that the examinations were

required by MCOLES.  (ECF No. 25-8 at PageID. 1965 ¶ 9.)  However, he claims

---

[6] To the extent Herring's claims were based on his 2019 termination, they would
be precluded by res judicata for the reasons explained in the Court's February 7,
2023 decision.  (*See* ECF No. 11.)

he was sent to a doctor for the evaluation that no other police officer was required

to use.  (*Id.*)  Defendants present undisputed evidence to show that they did not

select the doctors or medical personnel who conducted the evaluation.  (*See* ECF

No. 27-1 at PageID. 2182 ¶ 2; ECF No. 27-2 at PageID. 2185 ¶¶ 3-4.)

Herring further claims that his union representative, Corporal Fred Hugley,

warned him that he was being set up to fail the evaluation.  (*Id.*)  According to

Herring, this union representative also told him that this action was in retaliation

for his cooperation with the FBI.  (*Id.*)  Herring does not offer an affidavit from the

union representative attesting to these purported statements or other admissible

evidence showing they were made.  "[A]t summary judgment, hearsay 'must be

disregarded.'"  *M.J. by & through S.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1

F.4th 436, 447 (6th Cir. 2021) (quoting *U.S. Structures, Inc. v. J.P. Structures,

Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997)).

For these reasons, Herring has not established that the fitness-for-duty

evaluation was motivated by his protected conduct.  Moreover, the Sixth Circuit

has held that "[p]sychological examinations . . . are not adverse actions."  *Harrison

v. City of Akron*, 43 F. App'x 903, 905 (6th Cir. 2002) (citing *Benningfield v. City

of Houston*, 157 F.3d 369, 376 (5th Cir. 1998)).

E.    **Howard's Fitness-for-Duty Examination**

For the same reasons, Howard cannot support his claims based on the fitness-for-duty examination he was required to undergo in 2022.  Howard and every other officer not hired by the police department within the previous two years were required to undergo fitness-for-duty examinations.  (ECF No. 24-8 at PageID. 1667 ¶ 3; ECF No. 24-10 at PageID. 1674 ¶¶ 2-3.)  This requirement was consistent with the collective bargaining agreement between Ecorse and the union representing the officers in its police department.  (ECF No. 24-10 at PageID. 1674, ¶ 3 (citing *id.* at PageID. 1679-80); *see also id.* at PageID. 1677.)  The CBA in fact permitted Ecorse to require the examinations annually.  (ECF No. 24-10 at PageID. 1680 § 46.4.)

**V.    Conclusion**

For the reasons discussed in the preceding section, the Court concludes that Plaintiffs fail to demonstrate that Defendants violated their First Amendment rights by retaliating against Plaintiff based on their protected speech or association with others.

Accordingly,

**IT IS ORDERED** that Defendants' summary judgment motion (ECF No.

24) is **GRANTED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: September 16, 2024